IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JAMES MARTZALL<br>    Plaintiff | §<br>§<br>§ | |
| VS. | § | C.A. NO. 5:22-cv-18-XR |
| | § | |
| DEUTSCHE BANK NATIONAL TRUST<br>COMPANY, AS INDENTURE TRUSTEE,<br>ON BEHALF OF THE HOLDERS OF<br>THE ACCREDITED MORTGAGE<br>LOAN TRUST 2006-2 ASSET BACKED<br>NOTES<br>    Defendant | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO REMAND

Defendant, Deutsche Bank National Trust Company, as Indenture Trustee, on behalf of the holders of the Accredited Mortgage Loan Trust 2006-2 Asset Backed Notes ("**Trustee**" or "**Defendant**"), files this Response to Plaintiff James Martzall's ("**Plaintiff**") Motion to Remand (Doc. No. 7) and would respectfully show unto the Court as follows:

## INTRODUCTION

1.      This matter consists of form allegations designed to stall a foreclosure sale of certain real property. Trustee is the mortgagee associated with the property. Plaintiff's claims are unsupported by any valid legal or evidentiary basis and should ultimately be dismissed with prejudice. Defendant has established diversity jurisdiction and Plaintiff's arguments regarding remand fail.

## NATURE AND STAGE OF PROCEEDING

2. Plaintiff filed the present suit in state court on or about December 30, 2021.[1] Defendant timely removed to the present jurisdiction on January 10, 2022.[2] Plaintiff's Complaint is a claim for Injunctive Relief.[3]

3. Plaintiff filed its Motion to Remand on February 8, 2022 challenging the jurisdiction of the Court.[4]

## STATEMENT OF ISSUES

4. **Issue:** Where the named defendant is a trustee and sued in its capacity as trustee of a trust, must the defendant plead facts to demonstrate it has substantial control over the trust assets in its notice of removal?

5. **Answer:** No. Defendant's pleadings in this case are sufficient to allege complete diversity according to the Fifth Circuit.

## SUMMARY OF THE ARGUMENT

6. Plaintiff alleges that the Court must remand the case back to Bexar County due to lack of subject matter jurisdiction because Defendant purportedly did not properly allege facts to support Defendant's citizenship, despite the fact that Plaintiff sued Defendant in its capacity of trustee of Accredited Mortgage Loan Trust 2006-2 Asset Backed Notes ("**Trust**").[5] Plaintiff does not dispute the amount in controversy nor the citizenship of the Trustee itself.[6]

---

[1] *See* the Complaint attached as Exhibit C-1 to Defendant's Notice of Removal. Doc. No. 1-4.
[2] Doc. No. 1.
[3] *Id.*
[4] *See* Motion to Remand. Doc. No. 7.
[5] *See* Motion to Remand, pgs. 1-2. Doc. No. 7.
[6] *See* Motion to Remand. Doc. No. 7.

2

7. Plaintiff argues that the test for determining the citizenship of a trust depends on whether or not the trust is a business trust or traditional trust.[7]

8. Defendant will show that it has sufficiently alleged facts in support of Defendant's citizenship, that Trustee, not the Trust, is the real party to the controversy, such that Trustee's citizenship is the determining factor for diversity jurisdiction has been previously determined and confirmed by the courts. Additionally, and out of an abundance of caution, Defendant will show that the Trust is a traditional trust that is not subject to the "All Members" rule referenced in the *Americold* decision as alleged by Plaintiff.

9. Plaintiff's motion to remand should be denied.

## ARGUMENT AND AUTHORITIES

### A.  Standards for Motion to Remand

10. A party may remove to federal court any action brough in a state court of which the district courts of the United States have original jurisdiction.[8] Subject-matter jurisdictions premised on diversity requires complete diversity of citizenship between the parties and an amount in controversy in excess of $75,000.[9]

11. The notice of removal is required to set forth a plain statement of the grounds for removal.[10] The short and plain statement does not need to be supported by evidence.[11]

---

[7] *See* Motion to Remand, pg. 3, para. 7.  Doc. No. 7.
[8] See 28 U.S.C.A. § 1441 (West).
[9] See 28 U.S.C.A. § 1332 (West).
[10] See 28 U.S.C.A. § 1446(a) (West).
[11] See *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87, 135 S. Ct. 547, 551, 190 L. Ed. 2d 495 (2014).

20060161.20220110/4268605.1

### B. Defendant's pleadings in this case are sufficient to allege complete diversity

12. In its Motion to Remand, Plaintiff's only contention is that Defendant failed to allege any specific facts which would support the traditional nature of the Trust.[12] Plaintiff appears to allege that Defendant must affirmatively plead facts to demonstrate that the trustee's control is real and substantial and that, absent these pleadings, Defendant has failed to properly assert the citizenship of all parties.[13] Although Defendant denies Plaintiff's assertion, even assuming that Defendant's pleadings are deficient, these alleged pleading deficiencies are precisely the kind of deficiencies that can be cured by amendment.

13. Plaintiff's allegation that Defendant must affirmatively plead facts to demonstrate that the Trustee's control is real and substantial has been attempted before by Plaintiff's Counsel to no avail. Specifically, this tactic was attempted in *Lake Passage Trust v. HSBC Bank USA, N.A.*, et al in the United States District Court Southern District of Texas, Houston Division.[14] Before the Southern District was a nearly identical Motion to Remand filed by Plaintiff's Counsel. Plaintiff's Counsel asserted the same argument that defendant only alleged the citizenship of the trustee and that the trustee's control is "real and substantial".[15]

14. The Court in *Lake Passage Trust* stated that the defendant's failure to allege specific facts that would support evidence that the trustee exerts real and substantial control over the trust is not fatal to its removal.[16] Plaintiff's counsel in Lake Passage Trust, as in the present case, relied on a District Court case, *Booty v. Shoney's*, to support its assertion that Defendant

---

[12] *See* Motion to Remand, pg. 3, para. 6-7, pg. 4, para 10. Doc. No. 7.
[13] *See* Motion to Remand, pg. 3, para. 6-7, pg. 4, para 10. Doc. No. 7.
[14] See *Lake Passage Tr. v. HSBC Bank USA, N.A.*, No. 4:20-CV-03474, 2021 WL 1526792 (S.D. Tex. Apr. 19, 2021).
[15] See *Lake Passage Trust*, 2021 WL 1526792, at *1.
[16] See *Lake Passage Trust*, 2021 WL 1526792, at *2.

4

needs to allege specific facts as to the nature of the Trust in its removal pleadings.[17] The Court in *Lake Passage Trust* stated that *Booty* did not involve a trust, nor did it set out the requirement for, or even address, how a removing party must describe a trust in a notice of removal.[18] Further, the Court in Lake Passage Trust cited the Supreme Court standard that all that is required for a removal is a "short and plain statement of the grounds for removal".[19] The Court determined that by describing Trustee's position as a trustee, citing to *Navarro* that the Trustee's citizenship governs and defining the Trustee as a national banking association and principal place of business, the Defendant's removal pleadings were sufficient as in the present case.[20]

15. The Fifth Circuit addressed nearly identical removal pleadings as the subject removal pleadings in the present matter in *Bynane v. Bank of N.Y Mellon* and *SGK Props., L.L.C.* In both *SGK Props., L.L.C.* and *Bynane*, the district courts denied the plaintiff's motion to remand, and both decisions were affirmed by the Fifth Circuit.[21] Plaintiff's attempt to impose a higher pleading standard on Defendant simply finds no support in the case law.

16. In *Booty*, the defendant corporation failed to allege its state of incorporation in its notice of removal.[22] In response to the plaintiff's motion to remand, the defendant submitted an affidavit stating its state of incorporation and requesting leave of court to amend.[23] As the Court correctly held, "[a]mendments to defective allegations of jurisdiction are permitted.[24]

---

[17] See *Lake Passage Trust*, 2021 WL 1526792, at *2; see also Motion to Remand, pg. 3, para. 2. Doc. No. 7, referencing *Booty v. Shoney's, Inc.*, 872 F. Supp. 1524, 1528 (E.D. La. 1995).
[18] See *Lake Passage Trust*, 2021 WL 1526792, at *2.
[19] See *Lake Passage Trust*, 2021 WL 1526792, at *2.
[20] See *Lake Passage Trust*, 2021 WL 1526792, at *2.
[21] See, *SGK Properties, L.L.C. v. U.S. Bank Nat'l Ass'n for Lehman Bros. Small Balance Com. Mortg. Pass-Through Certificates, Series 2007-3*, 881 F.3d 933, 940 (5th Cir. 2018); *Bynane v. Bank of New York Mellon for CWMBS, Inc. Asset-Backed Certificates Series 2006-24*, 866 F.3d 351, 358–59 (5th Cir. 2017).
[22] See Booty, 872 F. Supp. At 1529.
[23] *Id.*
[24] *Id..*, citing 28 U.S.C.A. § 1653 (West).

5

17. Thus, in the event that this Court finds that Defendant's removal pleadings should have included allegations to the effect that Trustee's control over the Trust's assets is real and substantial, Defendant respectfully request leave of Court pursuant to Fed. R. Civ. P. 15 and 28 U.S.C. § 1653 to amend their removal pleadings.

### C.    Trustee, not the Trust, is the actual party to this cause of action

18. The Supreme Court has directed that "a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy."[25] Because the citizenship of only the real parties to the controversy are relevant to diversity jurisdiction, the first step of the inquiry is necessarily to determine who those parties are. That was the issue decided in *Navarro Savings Ass'n v. Lee*, 446 U.S. 458, 100 S. Ct. 1779 (1980).[26] Citing the "rule that diversity jurisdiction depends upon the citizenship of real parties to the controversy," the Court explained that the answer to this question turns on "whether [the] trustees are real parties to this controversy for purposes of a federal court's diversity jurisdiction."[27] The Court noted that this principle has governed diversity jurisdiction since the nineteenth century.[28]

19. In *Bynane*, the Fifth Circuit unequivocally held that the *Navarro* framework applies when (1) the trustee is sued in its own name, and (2) the trustee maintains real and substantial control over the trust's assets.[29] In *Bynane*, a borrower sued the trustee of the trust holding his home loan, "The Bank of New York Mellon, as trustee for the certificateholders of

---

[25] *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460, 100 S. Ct. 1779, 64 L. Ed. 2d 425 (1980).
[26] *See Id.* at 458 ("The question is whether the trustees of a business trust may invoke the diversity jurisdiction of the federal courts on the basis of their own citizenship, rather than that of the trust's beneficial shareholders.").
[27] *Id.* at 462 & n.9.
[28] *See Id.* at 463.
[29] *Bynane*, 866 F.3d 351.

20060161.20220110/4268605.1

the CWABS Inc., Asset-Backed Certificates, Series 2006-24."[30] The trustee and the other defendants removed the case to federal court, and the borrower moved to remand.[31] In affirming the district court's denial of the plaintiff's motion to remand, the Fifth Circuit considered whether *Navarro* or *Americold* controlled for purposes of determining diversity jurisdiction when the trustee is sued in its own name.[32] The court explained that, if the trustee sues or is sued in the trustee's own name, then Navarro's rule controls."[33] The Fifth Circuit also explained that *Americold* and *Navarro* "coexist".[34] Pursuant to Americold, "when an artificial entity is sued in its name, it takes the citizenship of each of its members."[35]

20.     Consistent with the Supreme Court's long-standing analysis of determining who the real parties in controversy are in determining whose citizenship matters for purposes of diversity jurisdiction, the Fifth Circuit went on to explain that "[w]here a trustee has been sued or files suit in her own name, the only preliminary question a court must answer is whether the party is an 'active trustee[] whose control over the assets held in [its] name[] is real and substantial.'"[36]

21.     After deciding *Bynane* in 2017, the Fifth Circuit applied the *Bynane* analysis in *SGK Properties, L.L.C.* and, because the plaintiffs-appellants sued the trustee in its own name, the Court once again rejected the plaintiffs' argument that *Americold* applied.[37] Like the *Bynane*

---

[30] See generally *Bynane*, 866 F.3d 351.
[31] *Id.* at 354.
[32] *Id.* at 357. ("The crux of the issue raised by Bynane's argument is whether Navarro controls (i.e., we should look at only the trustee's citizenship) or whether Americold controls (i.e., we should look at the citizenships of all of the trust's shareholders).").
[33] *Id.* at 358.
[34] *Id.*
[35] *Id.* at 357 (internal citation omitted).
[36] *Id.* at 357.
[37] *SGK Properties, L.L.C.*, 881 F.3d 933 ("Because SGK and Katz sued the U.S. Bank in its capacity as trustee, their reliance on Americold is unavailing. Further, this court has previously held that the Navarro rule still controls when the trustee is a national banking association.").

7

and *SGK* plaintiffs, Plaintiff sued defendant in its own name as trustee; accordingly, the analysis turns to whether defendant has real and substantial control over the trust's assets.

22. To determine whether the trustees, rather than the trust, were the real parties to the controversy in *Navarro*, the Court looked at the rights and powers the trustees possessed. The Court stated that its prior decision in *Bullard v. Cisco*, 290 U.S. 179 (1933) "reaffirm[ed] that a trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefits of others."[38]  In *Bullard*, the trust beneficiaries were investors who had conveyed certain bonds to a committee formed by a protective agreement.[39] Although the agreement did not use trust language, the Court held that the "rights, powers and duties expressly assigned" to committee members "necessarily" made them trustees.[40] For example, the agreement gave the committee members "full title to the deposited bonds," and it defined "the control and power of disposal which the trustees were to have over them."[41]

23. The Court went on to observe that the trustees in *Navarro* had the same powers as the committee members in *Bullard*.[42] The trustees were authorized to take legal title to trust assets, to invest those assets for the benefit of the shareholders, and to sue and be sued in their capacity as trustees. Significantly, the Court found that, because the trustees sought damages for breach of a promissory note to which they held legal title and over which they held power to manage and dispose, the trustees were acting in the lawsuit in their capacity as trustees and by virtue of the trustee powers they held.[43] In contrast, the trust's beneficial shareholders "had no

---

[38] *Id.* at 464.
[39] *Bullard*, 290 U.S. at 189
[40] *Id.*
[41] *Id.*
[42] *Navarro Sav. Ass'n*, 446 U.S. at 464.
[43] *Id.*

8

voice in the initial investment decision [and could] neither control the disposition of this action nor intervene in the affairs of the trust except in the most extraordinary situations."[44] Accordingly, it was the trustees, not the beneficial shareholders of the trust, who were the real parties to the controversy in *Navarro*, and it was the trustees' citizenship, not that of the trust's beneficial shareholders, that mattered for diversity jurisdiction.

24. *Navarro* reaffirmed the long-standing principle that, when the trustee is the real party to the controversy by virtue of the fact that it possesses powers to hold, manage, and dispose of the trust's assets for the benefit of the trust's beneficiaries, "'[t]he beneficiaries [are] not necessary parties and their citizenship [is] immaterial.'"[45]  That principle was again recognized by the Fourth Circuit following the *Americold* decision, when it commented:  "Although *Navarro* involved an action brought in the name of individual trustees, it was generally read to imply that when a trustee 'possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others,' a court should refer only to the citizenship of the trustee to determine the trust's citizenship."[46]

25. As in the present case, the Fifth Circuit addressed in *Justice v. Wells Fargo* whether a bank as trustee and in accordance with the subject pooling and servicing agreement was to be determinative of citizenship for jurisdictional purposes or should the Court look to the citizenship of the trust's beneficiaries.[47]

---

[44] *Id.* at 464–65.
[45] *Id.* at 464
[46] *Zoroastrian Ctr. & Darb-E-Mehr of Metro. Washington, D.C. v. Rustam Guiv Found. of New York*, 822 F.3d 739 (4th Cir. 2016) (quoting *Navarro Sav. Ass'n*, 446 U.S. at 464).
[47] *Id.*, at 4.

9

26. The Fifth Circuit ruled that, "Where a trustee has been sued or files suit in her own name, the only preliminary question a court must answer is whether the party is an 'active trustee whose control over the assets held in [its] name is real and substantial'."[48] It further stated, "The fact [t]hat the trust [otherwise] may depart from conventional forms in other respects has no bearing upon this determination."[49] Finally, the Fifth Circuit stated, "Regardless of the whether the trust managed by Wells Fargo could be characterized as a 'traditional trust,' Wells Fargo itself wields the very sort of 'real and substantial' control over assets held in its name…" and "…the trust's beneficiaries have no power to control the operation and management of the Trust Fund."[50] In making its decision, the Fifth Circuit relied upon the specific language contained in the Pooling and Servicing Agreement, which stated that the trustee holds, "all the right, title and interest of the Depositor in and to the Trust Fund."[51]

27. The Fifth Circuit further states that the trust's beneficiaries have no power to control the operation and management of the trust fund.[52]

28. Applying the foregoing analysis to this case, it is readily apparent that the real party to the controversy is Trustee, not the beneficiaries of the Trust, and that the citizenship of the beneficiaries of the Trust is, therefore, irrelevant to diversity jurisdiction.

---

[48] *Id.*
[49] *Id.*
[50] *Id.*
[51] *Id.*
[52] See *Justice v. Wells Fargo Bank National Association*, 674 Fed.Appx.330 at 5.

20060161.20220110/4268605.1

**D.      The Trust is a traditional trust that is not subject to the "All Members"**

29.     Trustee possesses similar rights to the Trust's assets as the foregoing analysis, as illustrated by the following provisions of The Sale and Servicing Agreement ("**PSA**") and the accompanying Indenture ("**Indenture**") applicable to this matter.[53][54]

30.     It is clear by the terms of the PSA and the Indenture that the Trust is a traditional trust and not merely a nominal trust as Trustee's duties conform to the *Navarro* standard as follows:

- Upon the receipt by the Depositor, or its designee, of the purchase price for the Closing Date Mortgage Loans set forth in Section 2.03 hereof, the ownership of each Mortgage Note, each Mortgage and the contents of the Mortgage File related to each Closing Date Mortgage Loan will be vested in the Issuing Entity, and will be pledged to the Indenture Trustee, for the benefit of the Noteholders.[55]

- The Indenture Trustee, as indenture trustee of the Trust Estate, shall be entitled to all scheduled principal payments due after each Subsequent Cut-off Date, all other payments of principal due and collected after each related Subsequent Cut-off Date, and all payments of interest on the Subsequent Mortgage Loans, min us that portion of any such payment which is allocable to the period prior to the related Subsequent Cut-off Date. No scheduled payments of p1incipal due on or before the related Subsequent Cut-off Date and collected after the related Subsequent Cut-off Date shall belong to the Trust Estate pursuant to the terms of this Sale and Servicing Agreement.[56]

- Notwithstanding anything contained herein to the contrary, the Servicer shall not, without the Indenture Trustee's written consent, other than routine foreclosure actions: (i) initiate any action, suit or proceeding directly relating to the servicing of the Mortgage Loan solely under the Indenture Trustee's name without indicating the Servicer's representative capacity, (ii) initiate any other action, suit or proceeding not directly relating to the servicing of any

---

[53] A true and correct copy of the PSA is attached hereto as Exhibit 1. The PSA is publicly available on the Securities and Exchange Commission's website located at https://www.sec.gov/Archives/edgar/data/0001365364/000119312506141969/dex101.htm. Pursuant to Rule 201 of the Federal Rules of Evidence, Defendant requests that this Court take judicial notice of the PSA and its terms. Fed. R. Evid. 201.

[54] A true and correct copy of the Indenture is attached hereto as Exhibit 2. The Indenture is publicly available on the Securities and Exchange Commission's website located at https://www.sec.gov/Archives/edgar/data/0001365364/000119312506141969/dex41.htm. Pursuant to Rule 201 of the Federal Rules of Evidence, Defendant requests that this Court take judicial notice of the Indenture and its terms. Fed. R. Evid. 201.

[55] *See* Exhibit "1" §2.04(a) of the PSA.

[56] *See* Exhibit "1" §2.10(a) of the PSA.

20060161.20220110/4268605.1

> Mortgage Loan (including but not limited to actions, suits or proceedings against Noteholders or Certificateholders, or against the Depositor for breaches of representations and warranties) solely under the Indenture Trustee's name, (iii) engage counsel to represent the Indenture Trustee in any action, suit or proceeding not directly related to the servicing of any Mortgage Loan (including but not limited to actions, suits or proceedings against Noteholders or Certificateholders, or against the Depositor or breaches of representations and warranties, or (iv) prepare, execute or deliver any government filings, forms, permits, registrations or other documents or take any action with the intent to cause, and that actually causes, the Indenture Trustee to be registered to do business in any state..[57]
>
> ■ The Indenture Trustee's right to seek and recover judgment under this Indenture shall not be affected by the seeking, obtaining or application of any other relief under or with respect to this Indenture. Neither the lien of this Indenture nor any rights or remedies of the Indenture Trustee or the Holders of Notes shall be impaired by the recovery of any judgment by the Indenture Trustee against the Issuing Entity or by the levy of any execution under such judgment upon any portion of the Trust Estate.[58]
>
> ■ The right of the Indenture Trustee to perform any discretionary act enumerated in this Indenture shall not be construed as a duty, and the Indenture Trustee shall not be answerable for anything other than its negligence or willful misconduct in the performance of such act.[59]
>
> ■ The Indenture Trustee, any Agent, or any other agent of the Issuing Entity, in its individual or any other capacity, may become the owner or pledgee of Notes and, subject to Sections 6.07, 6.09 and 6.12 hereof, may otherwise deal with the Issuing Entity or any Affiliate of the Issuing Entity with the same rights it would have if it were not Indenture Trustee, Agent or such other agent.[60]
>
> ■ The Indenture Trustee may (but is not obligated to) make reasonable rules for any meeting of Noteholders.[61]

31.     It is explicitly clear according to the PSA and Indenture that the Trust is a traditional trust and there is no need to determine its membership."[62]

---

[57] *See* Exhibit "1" §5.01(c) of the PSA.
[58] *See* Exhibit "2" §5.18 of the Indenture.
[59] *See* Exhibit "2" §6.03(g) of the Indenture.
[60] *See* Exhibit "2" §6.05 of the Indenture.
[61] *See* Exhibit "2" §11.06 of the Indenture.
[62] *See Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 136 S. Ct. 1012, 1016, 194 L. Ed. 2d 71 (2016).

20060161.20220110/4268605.1

## **CONCLUSION AND PRAYER**

32.     Defendant has shown that the removal pleadings were adequate for removal purposes and that the Trustee, not the Trust, is the real party to the controversy and Trustee's citizenship is what matters for diversity jurisdiction. Additionally, the Trust is a traditional trust that is not subject to the "All Members" rule reinforced in the *Americold* decision. In the alternative and if necessary, Defendant motions this Court for leave to amend its Notice of Removal.

WHEREFORE, PREMISES CONSIDERED, Defendant prays this Court deny Plaintiff's Motion to Remand, and for such other relief to which Defendant may show itself to be entitled.

Respectfully submitted,

By: /s/ Michael F. Hord Jr.
Michael F. Hord Jr.
State Bar No. 00784294
Federal I.D. No. 16035
Eric C. Mettenbrink
State Bar No. 24043819
Federal I.D. No. 569887
HIRSCH & WESTHEIMER, P.C.
1415 Louisiana, 36th Floor
Houston, Texas 77002-2772
713-220-9182 Telephone
713-223-9319 Facsimile
Email: mhord@hirschwest.com
Email: emettenbrink@hirschwest.com

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of February, 2022, a true and correct copy of the foregoing and/or attached was served on each attorney of record or party in accordance with **Federal Rule of Civil Procedure 5(b)** as follows:

Jeffrey C. Jackson
Jeffrey Jackson & Associates, PLLC
2500 E. TC Jester Blvd., Ste. 285
Houston, TX 77008
**Via ECF**

/s/ Michael F. Hord Jr.
Michael F. Hord Jr.